No. 22,756.

ERNEST DIETZ, *Appellee*, v. AUGUST DIETZ, *Appellant*.

SYLLABUS BY THE COURT.

AUTOMOBILE—*Action for Conversion—Evidence*. The evidence relating to the ownership of the automobile involved in the case is held to be sufficient to support the verdict.

Appeal from Douglas district court; CHARLES A. SMART, judge. Opinion filed January 8, 1921. Affirmed.

*Edward T. Riling*, and *John J. Riling*, both of Lawrence, for the appellant.

*J. B. Wilson*, and *A. C. Wilson*, both of Lawrence, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an action to recover the value of a Ford car which plaintiff alleges he owned and which was wrongfully appropriated and converted by his father, the defendant. Judgment was given for the plaintiff and defendant appeals.

The ownership of the car is the controlling question in the case. The plaintiff owned a Chevrolet car, and under the advice of his father traded it for the Ford. By the terms of the trade the owner of the Ford was to receive $250 to boot, and the plaintiff, not having the money, his father volunteered to execute a note for the amount, which he subsequently paid. According to the plaintiff's testimony the advance of the boot money was made upon an agreement between plaintiff and defendant that the plaintiff would pay the defendant by working

for him through harvest and threshing, and he did work for him until the defendant took possession of the car. On his part the defendant concedes that plaintiff owned the Chevrolet which was exchanged for the Ford. He also admits that there was an agreement that the plaintiff should work and help defendant through the harvest period and also in putting in another crop, but he stated that he gave and paid the note on the basis that plaintiff and his two brothers should use the car. He further testified that plaintiff began working for him but frequently left the field and spent a good deal of time driving about in the car, and for that reason he took possession of it. His testimony was to the effect that the car was purchased for and belonged to the three boys. The two brothers of plaintiff were witnesses and while they stated that the boot money was paid by the father, and the plaintiff was to stay at home and work for the defendant for a period, and also that they were to have some use of the car, they did not claim and never have claimed to own the car. On the conflicting evidence the jury found in favor of the plaintiff. The testimony is sufficient to uphold the verdict.

In important particulars the testimony in behalf of defendant corroborates that of the plaintiff. All of it showed that the plaintiff owned the car which was traded for the Ford, also that plaintiff was to work for defendant in payment of the note given by the defendant, and further that some work was performed by him in payment of the advance. Defendant did not, as we have seen, claim that the car was obtained for himself but was acquired for his three boys, which included the plaintiff, but the brothers of the plaintiff do not and never have claimed to own any interest in the car.

We think the court correctly advised the jury in the instruction where it was said:

"The question you will have to determine, gentlemen, is really what took place down here at Kelsey's. That's really where the whole case turns. If this young man put in his Chevrolet car and traded for a Ford, and the father paid the difference upon the boy's promise to go out and work, then the car belongs to the boy, and he should recover its value; and that is true notwithstanding that he may not have worked as well or as long as the father hoped he might. The father couldn't take that car from the boy because he didn't work hard enough, or because he didn't

work steady enough, or because he didn't work as long as he hoped he would.  If that car belonged to the boy when he made the trade at Kelsey's it still belongs to him, and he should recover its value.  On the other hand, if that trade at Kelsey's was a trade whereby the father became the owner of that car when Kelsey traded for it, then the young man cannot claim it, and cannot claim its value, notwithstanding the father may have taken it and locked it up.  So your consideration will be directed largely to what took place down there.  Did Kelsey trade the car to the boy, or did he trade it to the father?"

Some objections were made to testimony and to other phases of the instructions, but we find nothing substantial in them.

The judgment is affirmed.